MINNIE L. GORDON, Administratrix of the Estate of WILLIAM CAPP, Deceased, Appellant, v. FLORENCE ERICKSON, Executrix of the Estate of M. A. CAPP, Deceased, or MICHAEL A. CAPP, Deceased, FLORENCE ERICKSON, THE MECHANICS BANK, a Corporation, and CORA CAPP.—No. 39946.—201 S. W. (2d) 404.

Division One, April 21, 1947.

*O. E. Shultz* for appellant.

*F. V. Worden* for respondents.

274

██ CLARK, J.—Suit by the administratrix of William Capp, deceased, against Michael Capp, brother of William, Cora Capp, wife of Michael, and Mrs. Erickson, daughter of Michael. After suit was brought, Michael died and revival was had against his executors. The purpose of the suit is to recover the sum of $46,020.00 withdrawn by Michael from a bank account standing in the names of William Capp and Michael Capp. The petition alleges mental incapacity of William and that he was unduly influenced by defendants to create the joint account from his own funds. Trial was by the court without a jury, judgment was for defendants and plaintiff appeals.

William was seventy-eight years old when he died on June 28, 1943. Michael was about a year younger than William. After farming together for a number of years the brothers came to St. Joseph in 1900 and started a grocery store in Florence Addition. In 1916 Michael started a store at another location. In 1928 William's wife died and thereafter until his death he lived with Michael and his family. William had no children or descendants. In 1941 William disposed of the store in Florence Addition and thereafter helped Michael in the other store.

In July, 1942, William opened a bank account with three deposits, aggregating $46,020.00, in the names: "William Capp and—or Michael Capp joint owners or to the survivor in case of the death of either." William transacted the business, but was accompanied by Michael and his daughter, Mrs. Erickson. Both William and Michael signed the signature card required by the bank. William was confined in a hospital for about ten days before his death on June 28, 1943. On June 26, Michael withdrew $35,000.00 from the joint account and withdrew the balance on July 2, 1943.

██ The bank account became the joint property of the two brothers with sole ownership in Michael at William's death, unless William intended otherwise or lacked mental capacity to create the account or was unduly influenced to do so. [Miss. ██ Valley Tr. Co. v. Smith, 320 Mo. 989, 9 S. W. (2d) 58; Murphy v. Wolfe, 329 Mo. 545, 45 S. W. (2d) 1079.]

██ There was little, if any, evidence of either mental incapacity or undue influence. Plaintiff offered four lay witnesses who testified to trivial incidents occurring some time in 1941, or before, such as William failing to recognize them although he knew them well. These witnesses are heirs, or close relatives of heirs, of William Capp and will benefit financially if plaintiff wins the suit. Two doctors and a number of lay witnesses testified that William was normal men-

tally. One of these doctors had known him for thirty years and the other attended him in his last illness.

The proof shows that William and Michael were closely associated in a personal and business way throughout their adult lives; that they were fond of each other and William was fond of Michael's family; but there is nothing to show that William did not attend to all his own business affairs until a few days before his death. There is no proof that either Michael or his daughter ever suggested that William create the joint bank account. They were present when he did so, but he did the talking and seemed to understand the effect of his action.

Appellant cites cases, such as Miss. Valley Tr. Co. v. Smith, 320 Mo. 989, 9 S. W. (2d) 58, to show that the burden was on defendants to prove that the bank account was a joint account with ownership in the survivor. The trial court so held and said: "that burden has been met by the evidence in this case."

Appellant argues that the evidence brings the case within the ruling of such cases as Schnur v. Dunker, (Mo. App.) 38 S. W. (2d) 282, [holding that it was a question for the trier of the facts as to whether a purported joint bank account was really for the purpose of paying the debts and funeral expenses of the depositor] and Mercantile Bank v. Haley, (Mo. App.) 179 S. W. (2d) 916, [where the depositor provided that no checks should be drawn during his life and detailed directions for distribution after his death]. The argument of appellant is based upon answers given by Michael at a hearing in the probate court where he said that William expected him to pay his funeral expenses, but all through his testimony Michael also said that William intended to make him a joint owner of the fund. There is nothing to show that William set aside $46,020.00 for the sole purpose of paying his funeral expenses and a few small personal bills. The only testimony as to a distribution of the fund after William's death was furnished by Mae Capp, mother of Jesse Capp, son of a deceased brother of William. She said that Michael told her that William requested that Jesse get his share and "that it would be divided between the two of them." This testimony, which the trial court was not compelled to believe, is far different from the facts in Mercantile Bank v. Haley, supra.

Appellant argues that defendants' actions in concealing the gift made by William "raises a strong inference or presumption that there was something wrong with the legality of the gift." This is based on certain answers made by Michael in a proceeding in the probate court to discover assets and on letters written by Mrs. Erickson to some of the heirs. We have waded through this testimony and find that defendants' answers and statements were grounded

276

upon their claim that the bank account was not an asset of William's estate. The trial court found that their claim was correct and approve his finding.

The judgment is affirmed. All concur.